IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **AISLYN BATISTA ACEVEDO**, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **PRESBYTERIAN COMMUNITY HOSPITAL INC.**, *et al.*, <br><br> *Defendants*. | Civ. No. 22-01468 (MAJ) |

**OPINION AND ORDER**

## I.    Introduction

On September 27, 2022, Plaintiffs Aislyn Batista Acevedo, Ina Ruth Kessler Krugman, and minor A.D.S.B. ("Plaintiffs") filed the instant suit on behalf of the late David Suárez ("Suárez") against Doctors' Center Hospital Bayamón ("Doctors' Center Hospital") and various other Defendants ("Defendants"). (**ECF No. 1**).[1] From September 29, 2021, until his death on October 23, 2021, Suárez was hospitalized at Ashford Presbyterian Hospital and Doctors' Center Hospital. Plaintiffs allege that, during the time that Suárez was hospitalized, Defendants failed to properly screen and treat Suárez in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). 42 U.S.C. § 1395. Plaintiffs further allege that all Defendants are liable under Puerto Rico law for negligence and medical malpractice. (**ECF No. 288**).

Presently before the Court is a Motion for Summary Judgment brought by Defendant Doctors' Center Hospital, seeking dismissal of the claims brought against it

---

[1] Plaintiffs filed their Second Amended Complaint, now the operative Complaint, on May 18, 2023 ("the Complaint"). (**ECF No. 288**).

under EMTALA. (**ECF No. 479**).[2] For the reasons set forth below, Doctors' Center Hospital's Motion for Summary Judgment is **DENIED**.

## II. Facts

On September 29, 2021, Suárez arrived at the Emergency Room of Ashford Presbyterian Hospital reporting intense pain in his stomach. (**ECF No. 480 at 1 ¶¶ 1–2**); (**ECF No. 605 at 1 ¶¶ 1–2**).[3] In order to evaluate his condition, Ashford Presbyterian Hospital ordered a magnetic resonance cholangiopancreatography examination ("MRCP") for Suárez. (**ECF No. 480 at 2 ¶ 6**); (**ECF No. 605 at 2–3 ¶ 6**). Medical staff at Ashford Presbyterian Hospital reached the conclusion that MRCP testing could not be performed on Suárez, however, because he was allegedly too obese to fit in the MRI machine used for the evaluation. *Id.* As a result, medical staff at Ashford Presbyterian Hospital recommended transferring Suárez to another institution. *Id.* The assigned physician at Ashford Presbyterian Hospital recorded in his notes that Dr. Rafael Morales Solís of Doctors' Center Hospital accepted the transfer of Suárez to his facility. (**ECF No. 480 at 3 ¶ 9**); (**ECF No. 605 at 4 ¶ 9**). Shortly thereafter, on October 1, 2021, Suárez was transferred to Doctors' Center Hospital. (**ECF No. 480 at 4 ¶ 13**); (**ECF No. 605 at 5 ¶ 13**).

---

[2] Doctors' Center Hospital has supported its Motion with a Statement of Uncontested Material Facts. (**ECF No. 480**). Plaintiffs have filed a Memorandum in Opposition and accompanying Opposing Statement of Uncontested Material Facts (**ECF No. 604, 605**). Doctors' Center replied, (**ECF No. 647, 649**), and Plaintiffs sur-replied (**ECF No. 704, 705**).

[3] The Court draws these facts from the Statements of Uncontested Material Facts filed by the parties. Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56(c), when tasked with resolving a motion for summary judgment, courts typically should credit only uncontroverted facts that are contained within "a separate, short, and concise statement of material facts" (typically presented as a "Statement of Uncontested Material Facts"). This statement should include specific citations to the record for each fact. D.P.R. Loc. Civ. R. 56(c). The court may disregard any statement of fact which does not comply with this rule. D.P.R. Loc. Civ. R. 56(e).

Upon his arrival at Doctors' Center Hospital, a triage nurse described the condition of Suárez as "serious" and "urgent." (**ECF No. 480 at 4 ¶ 15**); (**ECF No. 605 at 5 ¶ 15**). After evaluating Suárez, medical staff at Doctors' Center Hospital diagnosed him with acute pancreatitis. (**ECF No. 480 at 4–5 ¶¶ 18–19**); (**ECF No. 605 at 6 ¶¶ 18–19**). Nevertheless, Doctors' Center Hospital declined to treat Suárez; instead, after allegedly determining that the operating table at their facility "could not handle the patent's (sic) weight[,]" Doctors' Center Hospital elected to transfer Suárez back to Ashford Presbyterian Hospital. (**ECF No. 480 at 5–6 ¶¶ 21–26**); (**ECF No. 605 at 7–9 ¶¶ 21–26**). Notably, Plaintiffs dispute that Doctors' Center Hospital lacked an operating table sufficiently stable to support Suárez. (**ECF No. 605 at 7 ¶ 21**).

According to the Complaint, Suárez was transferred back to Ashford Presbyterian Hospital on October 2, 2021. (**ECF No. 288 at 25 ¶ 163**). On October 3, Suárez was transferred to the ICU at Ashford Presbyterian Hospital. (**ECF No. 288 at 25 ¶ 163**); (**ECF No. 367 at 5 ¶ 29**). By the following day, October 4, 2021, Suárez was intubated. (**ECF No. 288 at 27 ¶ 176**); (**ECF No. 367 at 5 ¶ 29**). After spending several weeks in a critical condition, Suárez died on October 23, 2021. (**ECF No. 288 at 29–30 ¶ 191**); (**ECF No. 367 at 5 ¶ 29**). Prior to his death, no MRCP evaluation was ever conducted. (**ECF No. 288 at 30 ¶ 193**); (**ECF No. 367 at 5 ¶ 29**). Nor was any surgical procedure ever performed on Suárez. (**ECF No. 288 at 30 ¶ 192**); (**ECF No. 367 at 5 ¶ 29**).

### III.   Legal Standard

Summary judgment is appropriate only when there is no genuine dispute as to any material fact and only questions of law remain. FED. R. CIV. P. 56(a); *White v. Hewlett Packard Enter. Co.*, 985 F.3d 61, 68 (1st Cir. 2021). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party[.]" *Flood v. Bank of Am.*

*Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). "[A] fact is material if it has the potential of affecting the outcome of the case[.]" *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (internal quotations omitted).

The party moving for summary judgment "bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This burden is met "when the moving party demonstrates that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) (quoting *Celotex*, 477 U.S. at 322). In opposing a motion for summary judgment, the plaintiff "bears the burden of producing specific facts sufficient to defeat summary judgment." *González-Cabán v. JR Seafood Inc.*, 48 F.4th 10, 14 (1st Cir. 2022) (internal quotations omitted). The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v. Quest Software*, Inc., 328 F.3d 1, 6 (1st Cir. 2003). The goal of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 56 (1st Cir. 2021) (internal quotations omitted).

**IV. Applicable Law and Analysis**

The Emergency Medical Treatment and Active Labor Act ("EMTALA" or "the Act") was enacted in 1986 "to prevent hospital emergency rooms from refusing to accept or treat patients with emergency conditions[.]" *Alvarez-Torres v. Ryder Memorial Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009) (citing *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1189 (1st Cir. 2009)) (internal quotations omitted). To achieve that end, "EMTALA

imposes duties on covered facilities to: (a) provide an appropriate medical screening examination for those who come to an emergency room seeking treatment, and (b) provide, in certain situations, such further medical examination and such treatment as may be required to stabilize the medical condition." *Id.* (citing 42 U.S.C. § 1395dd(a), (b)(1)(A)) (internal quotations omitted). To prove that a hospital facility has committed a violation of the screening or stabilization provisions of the Act, a plaintiff must show that:

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Id.* (citing *Correa*, 69 F.3d at 1190). The parties do not dispute that Doctors' Center Hospital is a participating facility covered by EMTALA, or that Suárez arrived at Doctors' Center Hospital seeking treatment. The parties only dispute whether (1) Plaintiffs have made out a claim that Doctors' Center Hospital failed to properly screen Suárez, and (2) Plaintiffs have made out a claim that Doctors' Center Hospital failed to stabilize Suárez before transferring him back to Ashford Presbyterian Hospital. The Court will address each issue in turn.

### A. Summary judgment is not warranted with respect to Plaintiffs' "screening" claim against Doctors' Center Hospital.

Under the EMTALA, a covered hospital must "afford an appropriate medical screening to all persons who come to its emergency room seeking medical assistance." *Correa*, 69 F.3d at 1190; *see also* 42 U.S.C. § 1395dd. A hospital fulfils this statutory duty "if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of

screening uniformly to all those who present substantially similar complaints." *Correa*, 69 F.3d at 1192–93 (citations omitted). A plaintiff seeking to recover under this provision "must proffer evidence sufficient to support a finding that [the patient] received materially different screening than that provided to others in his condition." *Reynolds v. Maine General Health*, 218 F.3d 78, 84 (1st Cir. 2000); *see also Colón v. Hosp. Dr. Pila*, 330 F. Supp. 2d 38, 43 (D.P.R. 2004) (With respect to "claims asserting inadequate screening, the plaintiff bears the burden of proving that in screening him or her, the hospital failed to follow the screening policy or standard of care which it regularly follows for other patients presenting substantially similar conditions") (citations and internal quotations omitted); *Sánchez Rivera v. Doctors' Center Hosp., Inc.*, 247 F. Supp. 2d 90, 98 (D.P.R. 2003) ("an EMTALA claim may only ensue for failure to screen in a manner comparable to others brought into the emergency room with the same conditions").

Doctors' Center Hospital argues that "the uncontested case evidence establishes that [it] . . . administered a screening reasonably calculated to identify critical medical conditions that may have been afflicting [Suárez,]" and that such a screening was "performed even-handedly to all those who present substantially similar complaints as Suárez." (**ECF 479 at 18–19**). These conclusions are contested by Plaintiffs, however. *See* (**ECF No. 604 at 19**) ("The medical evaluation conducted by Doctors' [Center Hospital] was so cursory that it amounted to no examination at all. Furthermore, Doctors' [Center Hospital] failed to provide Mr. Suárez with the same medical screening and stabilization that would have been provided to other patients in similar circumstances, neglecting to adhere to its own internal procedures, which resulted in disparate treatment.").

After careful review of the record, the Court finds that Plaintiffs have created a

genuine dispute of material fact on this issue. The record includes evidence that a screening reasonably calculated to identify critical medical conditions that may have been afflicting Mr. Suárez should have included an MCRP examination: Dr. Víctor Rivera Cruz, one of the physicians who attended Suárez at Doctors' Center Hospital, stated at deposition that once a suspicion or diagnosis of impacted gallstone is established, an MRCP should be ordered. (**ECF 487-6 at 147:7–9**). He admitted that "the clinical picture of the patient could have required an MRCP" but that the reason it was not done was because "the weight of the patient and body habitus of the patient did not provide it." (**ECF 487-6 at 148:2–5**). Yet, when pressed as to how he concluded that an MRCP could not be done, Dr. Rivera admitted that he reached that conclusion only after ignoring standard protocols and treating Suárez differently than other patients. Specifically, Dr. Rivera explained that, in some cases, an MRCP cannot be performed because a patient's weight and/or body habitus are such that the patient cannot fit into the MRCP machine. (**ECF 487-6 at 148:2–5**). Dr. Rivera explained multiple times that this determination is one that should be made by an MRI technician, not a doctor. (**ECF 487-6 at 148:5–7, 21–25**) ("That's why the technician has to interview the patient due to multiple things that make the MRI contraindicated. . . . [the weight and body curve for habitus are] not determined by the physician. It's determined by the technician when he does his interview."). This was corroborated by the deposition testimony of Mr. Juan Carlos Pérez Rivera, an MRI technician at Doctors' Center, who testified that, in order to confirm whether an MRCP can be performed on a particular patient, an MRI technician is required to bring that patient up to the imaging center. (**ECF 588-13 at 2:24–3:11**) (Q: "So, the only way to, in fact, corroborate if the patient fits or not into the MRI machine to perform an MRCP is to take the patient physically to the Imaging Center and try to enter

the patient into the machine, correct?" . . . A: "We have to bring the patient upstairs, yes. It would be negligent on my part not to bring the patient up."). Nevertheless, despite the apparent existence of this standard process, Dr. Rivera acknowledged that no MRI technician was ever consulted to evaluate Suárez. **ECF 487-6 at 149:1–21**) (Q: "And how do you know that the technician in this case determined that the MRCP could not be done in this patient?" A: "I don't think it was ordered at any time in this patient." Q: "So, there was no evaluation of a technician to see if an MRCP could be done in this patient because the MRCP was never ordered, correct?" . . . A: ". . . it was obvious it was not going to be able to be performed."). He also acknowledged that rather than follow the standardized procedures listed above, he used his own "clinical judgment" as a physician to determine that an MRCP could not be done. (**Id. at 149:23–150:6**) (Q: "So, you assumed that the patient was not going to fit in the machine, correct?" . . . A: "It's called clinical judgment, not assumption.").

Plaintiffs have met their burden to present competent evidence that in screening Mr. Suárez, Doctors' Center Hospital "failed to follow the screening policy or standard of care which it regularly follows for other patients presenting substantially similar conditions." *Colón,* 330 F. Supp. 2d at 43. Accordingly, summary judgment is denied with respect to Plaintiffs' "screening" claim.

**B. Summary judgment is not warranted with respect to Plaintiffs' "stabilization" claim against Doctors' Center Hospital.**

Doctors' Center Hospital next argues that Plaintiffs have failed to introduce any evidence to support their claim that Doctors' Center Hospital improperly transferred Suárez without first stabilizing his emergency medical condition. The Court disagrees. Under EMTALA, "'to stabilize' means . . . to provide such medical treatment of the

condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" 42 U.S.C. § 1395dd(e)(3)(A); *see also* 42 U.S.C. § 1395dd(e)(4) (defining "transfer"). "[I]n determining whether a patient has been stabilized, the factfinder must consider whether the medical treatment and subsequent release were reasonable in view of the circumstances that existed at the time the hospital . . . transferred the individual." *Torres Otero v. Hosp. Gen. Menonita*, 115 F. Supp. 2d 253, 259–60 (D.P.R. 2000). In short, a decision to transfer an unstable patient must serve "the best interests of the patient[.]" *Ramos-Cruz v. Centro Médico del Turabo*, 642 F.3d 17, 19–20 (1st Cir. 2011); *see also Correa*, 69 F.3d at 1190 (noting that "if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition . . . unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety.").

The record presents at least one dispute of material fact that must be submitted to the jury. For one, the circumstances that purportedly justified the transfer of Suárez from Doctors' Center Hospital to Ashford Presbyterian Hospital are in dispute: whereas Doctors' Center Hospital alleges that the transfer "was required inasmuch as [Doctors' Center Hospital] . . . [concluded] that the operating table could not handle the . . . weight" of Suárez, (**ECF No. 480 at 5 ¶ 21**), Plaintiffs categorically deny that allegation, (**ECF No. 605 at 7 ¶ 21**), argue that Doctors' Center Hospital lacks any admissible evidence to prove their contentions regarding the limited capacity of the operating table, *id.*, and present circumstantial evidence indicating that the operating table in question could have supported a person the size of Suárez, (**ECF No. 605-7 at 4**). This disputed fact is plainly material to the issue of whether the transfer of Suárez was "reasonable," since the

purportedly limited weight capacity of the operating table is the only alleged justification for the transfer proffered by Doctors' Center Hospital. *Torres Otero*, 115 F. Supp. 2d at 259–60 ("[I]n determining whether a patient has been stabilized, the factfinder must consider whether the medical treatment and subsequent release were reasonable in view of the circumstances that existed at the time the hospital . . . transferred the individual."). Accordingly, summary judgment is not warranted with respect to Plaintiffs' "stabilization" claim.[4]

### V. Conclusion

After careful consideration of the record, the Court concludes that Plaintiffs have raised a genuine dispute of material fact as to whether, in violation of the EMTALA, Doctors' Center Hospital (1) failed to properly screen and evaluate Suárez before transferring him to another hospital, and (2) failed to stabilize Suárez before transferring him to another hospital. Accordingly, summary judgment is not warranted and the instant motion is **DENIED**.

It is so **ORDERED**.

In San Juan, Puerto Rico, this 26th day of January, 2026.

>*/s/ María Antongiorgi-Jordán*
>**MARIA ANTONGIORGI-JORDAN**
>**UNITED STATES DISTRICT JUDGE**

---

[4] Because the existence of a genuine dispute over any one material fact is sufficient to defeat summary judgment, FED. R. CIV. P. 56(a), the Court need not and will not comb the record to identify whether any additional disputes of material fact may exist.