UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **AISLYN BATISTA ACEVEDO,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **PRESBYTERIAN COMMUNITY HOSPITAL INC.,** *et al.*, <br><br> *Defendants*. | Civ. No. 22-01468 (MAJ) |

**OPINION AND ORDER**

**I.     Introduction**

On September 27, 2022, Plaintiffs Aislyn Batista Acevedo, Ina Ruth Kessler Krugman, and minor A.D.S.B. ("Plaintiffs") filed the instant suit on behalf of the late David Suárez ("Suárez") against Ashford Presbyterian Community Hospital and various other defendants ("Defendants"). (**ECF No. 1**).[1] From September 29, 2021, until his death on October 23, 2021, Suárez was hospitalized at Ashford Presbyterian Hospital and Doctors' Center Hospital Bayamón. Plaintiffs allege that, during the time that Suárez was hospitalized, Defendants failed to properly screen and treat Suárez in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). 42 U.S.C. § 1395. Plaintiffs further allege that all Defendants are liable under Puerto Rico law for negligence and medical malpractice. (**ECF No. 288**).

Defendants intend to call Doctor Dor Marie Arroyo Carrero ("Dr. Arroyo") at trial as an expert witness, (**ECF No. 657**), and Plaintiffs move the Court to rule the proffered

---

[1]     Plaintiffs filed their Second Amended Complaint, now the operative Complaint, on May 18, 2023. (**ECF No. 288**).

testimony of Dr. Arroyo inadmissible. (**ECF No. 754**). Plaintiffs raise three proposed grounds for the exclusion of Dr. Arroyo's testimony. (**ECF No. 754 at 3 ¶ 12**). First, Plaintiffs allege that Dr. Arroyo maintained a previous relationship with Plaintiffs, that she later "switched sides in this litigation," and that she should therefore be disqualified as an expert witness. (**ECF No. 754 at 3–7**). Second, Plaintiffs allege that Defendants failed to make Dr. Arroyo available for a deposition and Plaintiffs thus face the risk of being "ambushed" at trial with expert witness testimony that they did not have the opportunity to examine at deposition. (**ECF No. 754 at 8 ¶ 22**). Finally, Plaintiffs move for the exclusion of Dr. Arroyo as an expert witness on the grounds that her Rule 26 report failed to disclose the compensation she was to receive in this case from Defendants. (**ECF No. 754 at 7 ¶ 20**). Defendants oppose the Motion. (**ECF No. 776**). For the reasons set forth below, Plaintiffs' Motion in Limine is **DENIED**.

**II. Analysis**

**A. Dr. Arroyo was never retained by Plaintiffs and will not be disqualified for purportedly "switching sides" in this litigation.**

In November 2022, Plaintiffs contacted Dr. Arroyo to request her services as an expert witness in this case. (**ECF No. 754 at 1–2 ¶ 4**). In a text message exchange, Plaintiffs invited Dr. Arroyo to discuss the facts of the case. *Id*. According to Plaintiffs, when their attorney spoke with Dr. Arroyo later that day, she shared "the name[s] of the parties, a detailed explanation regarding the facts and theory of the case, the plaintiffs' emotional state at that time, the expert witnesses that plaintiffs had already retained, the ones that they were planning on retaining and other case-related matters." (**ECF No. 754 at 2 ¶ 5**). In February 2023, following up on their previous interaction, Dr. Arroyo sent a proposed contract to Plaintiffs. (**ECF No. 754 at 2 ¶ 8**). Plaintiffs never executed the

contract with Dr. Arroyo. *Id.* Then, over two years later, in June 2025, Defendants informed Plaintiffs that Dr. Arroyo would serve as an expert witness in this case for Defendants. (**ECF No. 754 at 2 ¶ 9**).

Dr. Arroyo disputes the Plaintiffs' characterization of their prior interactions. Dr. Arroyo asserts, under penalty of perjury, that it is her practice to "refrain from discussing case specifics, review[ing] documents or giv[ing] any preliminary opinions" until a formal contract has been executed, and she emphasizes that no contract ever existed between herself and Plaintiffs. (**ECF No. 776 at 3 ¶ 4**). Dr. Arroyo thus disputes the allegation that she received confidential information from Plaintiffs regarding this case. Defendants also point out that, although Dr. Arroyo was noticed as an expert witness in June 2025, and issuing three expert reports, Plaintiffs raised no concerns or objections to her serving as an expert witness until January 2026. (**ECF No. 776 at 3 ¶ 6**).

"[A]lthough cases that grant disqualification" of expert witness testimony "are rare," a federal district court has "the inherent power to disqualify experts." *Popular, Inc. v. Popular Staffing Servs. Corp.*, 239 F. Supp. 2d 150, 152 (D.P.R. 2003). Where a person is retained as an expert witness or a consultant for one party and receives confidential information from that party, that individual may not later "switch sides" to represent an adverse party as an expert witness. *Id.* (noting that this constitutes "a clear case for disqualification") (quoting *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991)). However, in other cases in which an expert has not "clearly switched sides, courts have rejected a bright-line rule and have adopted the following test: . . . [1] was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed? and [2] was any confidential or privileged information disclosed by the first party to the expert?" *Id.*; *González-López*

*v. Municipality of San Juan*, Civ. No. 23-1278, 2025 WL 2044157, at *1 (D.P.R. March 6, 2025).[2] "Only if the answer[s] to both questions are affirmative should the witness be disqualified" and "[t]he party seeking disqualification bears the burden of proving these elements." *Id.* (citing *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C. 1991) and *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 580 (D.P.R. 2003)).

When determining whether there existed a "confidential relationship" between a proffered expert witness and an adverse party, the Court may look to whether "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Popular, Inc.*, 239 F. Supp. 2d at 152 (internal quotations and citations omitted). On the other hand, where an expert has "met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services, [courts have found that the evidence supports the finding that the meeting was a type of informal consultation rather than the commencement of a long-term relationship." *Id.*

In this case, Dr. Arroyo "met but once with counsel [for the Plaintiffs], was not retained," and ultimately "was not requested to perform any services" for Plaintiffs. *Id.* While Plaintiffs allege that Dr. Arroyo received "a detailed explanation regarding the facts and theory of the case, the Plaintiffs' emotional state at that time, the expert witnesses that Plaintiffs had already retained, [the other expert witnesses] they were planning on

---

[2] As the Court noted in *Popular, Inc.*, "[m]any courts have also considered a third element: the public interest in allowing or not allowing an expert to testify." *Popular, Inc.*, 239 F. Supp. 2d at 152 (citing *Koch Ref. Co.*, 85 F.3d 1178, 1181 (5th Cir. 1996). Since Plaintiffs raise no arguments relating to this possible third element, the Court declines to address the issue.

retaining[,] and other case-related matters[,]" (**ECF No. 754 at 2 ¶ 5**),[3] Plaintiffs fail to establish that it was reasonable for them to believe that a confidential relationship existed with Dr. Arroyo during Plaintiffs' attorneys first and only meeting her. Furthermore, Plaintiffs ultimately declined to retain Dr. Arroyo, despite the fact that she offered her services by sending a proposed contract to Plaintiffs. (**ECF No. 754 at 2 ¶ 8**).

Moreover, when Defendants disclosed that they had retained Dr. Arroyo as an expert in June 2025, Plaintiffs remained silent and did not seek the Court's intervention for an alleged conflict of interest. In fact, Plaintiffs went further. They did not oppose being evaluated by Dr. Arroyo on two separate occasions, which resulted in Dr. Arroyo rendering three expert reports. Had there been any concern regarding a possible conflict of interest, Plaintiffs would have been expected to raise the issue then, not at the eleventh hour. Under these circumstances, Plaintiffs lack adequate grounds to move for the disqualification of Dr. Arroyo as an expert witness for Defendants.

**B. Plaintiffs are at fault for their failure to depose Dr. Arroyo.**

Next, Plaintiffs move to disqualify Dr. Arroyo on the grounds that she was never made available for deposition, and that Plaintiffs face the risk of being "ambushed" at trial with expert witness testimony they did not have the opportunity to previously examine. (**ECF No. 754 at 8 ¶ 22**). The Court disagrees: based on the record before the Court, Plaintiffs are at fault for their failure to depose Dr. Arroyo.

Defendants noticed Dr. Arroyo as a prospective expert witness on June 4, 2025. (**ECF No. 754 at 7 ¶ 21**). The parties were on notice that depositions of expert witnesses

---

[3] The Court notes that these allegations are disputed. *See* (**ECF No. 776 at 3 ¶ 4**). The Court need not resolve this factual dispute, however, because even if the allegations in Plaintiffs motion were true, Plaintiffs nevertheless fail to establish that Dr. Arroyo should be disqualified as a witness for the reasons set forth above.

were scheduled to take place before August 30, 2025. (**ECF No. 383**). Nevertheless, Plaintiffs did not attempt to schedule the deposition of Dr. Arroyo until August 14, 2025. (**ECF No. 776 at 8 ¶ 16**). When they did so, Plaintiffs proposed to conduct the deposition between August 25 and August 30, the last week of discovery. *Id.* After Dr. Arroyo informed Plaintiffs that prior professional commitments would prevent her from accommodating that narrow timeframe for conducting the deposition, (**ECF No. 776 at 8 ¶ 16**), Plaintiffs never moved the Court for an extension of time to depose Dr. Arroyo. As Plaintiffs are aware, the Court has previously extended such deadlines in this case. *See, e.g.*, (**ECF No. 427**); (**ECF No. 442**). The Court therefore finds that Plaintiffs are at fault for their failure to previously depose Dr. Arroyo. Accordingly, the Court will not disqualify Dr. Arroyo as an expert witness on this ground.

### C. Dr. Arroyo's failure to disclose all relevant information regarding her compensation was harmless.

Plaintiffs also move to exclude the proffered expert witness testimony of Dr. Arroyo on the grounds that she failed to disclose all necessary information in her Rule 26 disclosures. *See* FED. R. CIV. P. 26(a)(2)(B). Specifically, Plaintiffs move for exclusion because Dr. Arroyo "failed to . . . disclose the compensation that she would receive in this case from the defendants" in violation of Rule 26(a)(2)(B)(vi) of the Federal Rules of Civil Procedure. (**ECF No. 754 at 7 ¶ 20**).

Defendants identify several flaws in Plaintiffs' argument. For one, Defendants have already provided the information sought by Plaintiffs: after realizing their oversight, Defendants represent that they provided all relevant information regarding Dr. Arroyo's compensation in January 2026 by providing Dr. Arroyo's retention agreement. (**ECF No.**

**776 at 10 ¶ 19)**.[4] (**ECF No. 754-3**).[5] Plaintiffs thus fail to offer any explanation as to how they are prejudiced by the late disclosure. *See* Fed. R. Civ. P. 37(c)(1) (providing that incomplete or late disclosures may result in the exclusion of the witness "unless the failure was substantially justified or is harmless."). The Court agrees with Defendants that the late disclosure of information regarding Dr. Arroyo's compensation was harmless. Accordingly, the Court declines to exclude Dr. Arroyo's testimony from trial on that basis.

### III. Conclusion

After careful consideration, the Court finds that Plaintiffs have failed to identify valid grounds for the exclusion of Dr. Arroyo as an expert witness. First, Dr. Arroyo never "switched sides" in this litigation and will not be excluded on that basis. Second, Plaintiffs were at fault for their failure to depose Dr. Arroyo; the Court therefore will not disqualify her as a witness on that basis either. Finally, the Court finds that the Rule 26 violation raised by Plaintiffs was harmless; accordingly, exclusion of her testimony is not warranted. Plaintiffs' Motion in Limine is therefore **DENIED** in its entirety.

It is so **ORDERED**.

In San Juan, Puerto Rico, this 2nd day of February, 2026.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

[4] To the extent that any information regarding Dr. Arroyo's compensation and subject to the mandatory disclosure requirements of Rule 26(a)(2)(B)(vi) remains undisclosed by Defendants, Plaintiffs shall notify Defendants of the information that remains outstanding by 2/4/2026. If any such request is served on Defendants by that date, Defendants shall provide the information sought by 2/6/2026.

[5] If Plaintiffs had any reason to believe that the information regarding Dr. Arroyo's compensation that was already in their possession was somehow incomplete, Plaintiff could have requested such information from Defendants at any time over the last six months. Plaintiffs elected not to do so. Defendants thus credibly accuse Plaintiffs of "lying in wait" and seeking to exploit a relatively marginal Rule 26(a)(2)(B) violation for a tactical advantage. The Court declines to award Plaintiffs that unfair advantage.