UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **AISLYN BATISTA ACEVEDO,** *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**PRESBYTERIAN COMMUNITY HOSPITAL INC.,** *et al.*,<br><br>*Defendants*. | Civ. No. 22-01468 (MAJ) |

**OPINION AND ORDER**

### I. Introduction

On September 27, 2022, Plaintiffs Aislyn Batista Acevedo, Ina Ruth Kessler Krugman, and minor A.D.S.B. (collectively, "Plaintiffs") filed the instant suit on behalf of the late David Suárez ("Suárez") against Ashford Presbyterian Hospital ("Presby") and various other defendants (collectively, "Defendants"). (**ECF No. 1**).[1] From September 29, 2021, until his death on October 23, 2021, Suárez was hospitalized at Presby and Doctors' Center Hospital Bayamón ("Doctors'"). Plaintiffs allege that, during the time that Suárez was hospitalized, Defendants failed to properly screen and treat Suárez in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). *See* 42 U.S.C. § 1395. Plaintiffs also allege that all Defendants are liable under Puerto Rico law for negligence and medical malpractice. (**ECF No. 288**). To prove their claims, Plaintiffs intend to introduce at trial the expert witness testimony of Dr. Dainius Drukteinis ("Dr. Drukteinis"). Defendants move the Court to rule the proffered testimony of Dr. Drukteinis

---

[1] Plaintiffs filed their Second Amended Complaint, now the operative Complaint, on May 18, 2023. (**ECF No. 288**).

inadmissible. (**ECF No. 752**). Plaintiffs oppose the motion. (**ECF No. 782**). For the reasons provided below, the motion is **DENIED**.

## II.    Background

According to the operative complaint,[2] Suárez was admitted to the emergency room at Presby on September 29, 2021. (**ECF No. 288 at 16 ¶ 107**). At that time, Suárez was complaining of acute abdominal pain. *Id*. Medical staff at the hospital ordered "an abdominal sonogram, some laboratory tests, pain medications and hydration[,]" as well as "a consultation with internal medicine and surgery services." (**ECF No. 288 at 16 ¶ 110**).

Early the next day, Suárez was evaluated by Dr. Cuff, a physician specializing in general surgery. (**ECF No. 288 at 5 ¶ 21, 16 ¶ 112**). Dr. Cuff determined that Suárez would need to undergo surgery, yet he decided that Suárez would first have to submit to an "MRCP" evaluation before surgery would be possible. (**ECF No. 288 at 17 ¶ 113**). By disputed means, medical staff at the hospital allegedly determined that Suárez was too obese to fit in the MRI machine used to conduct MRCP procedures at Presby. (**ECF No. 288 at 17 ¶ 115**). Accordingly, on September 30, 2021, the physicians treating Suárez decided to transfer him to another hospital facility. (**ECF No. 288 at 18 ¶ 120**).

On October 1, 2021, Suárez was transferred to Doctors'. By the next day, medical staff at that facility allegedly determined that they also would not be able to perform the necessary procedures on Suárez because their facilities could not accommodate his size. (**ECF No. 288 at 23–24 ¶¶ 155–156**). Medical staff at Doctors' then decided to transfer Suárez back to Presby. (**ECF No. 288 at 24 ¶ 161**).

---

[2] The Court recites the following facts from the Complaint for sole purpose of providing background on the controversy between the parties; the Court does not accept the allegations in the Complaint as true.

Over the course of the next two days, Suárez's condition deteriorated. (**ECF No. 288 at 25–27 ¶¶ 163–176**). On October 4, 2021, Suárez was intubated. (**ECF No. 288 at 27 ¶ 176**). Several weeks later, on October 23, 2021, Suárez died. (**ECF No. 288 at 29–30 ¶ 191**).

To prove their negligence claims against Defendants, Plaintiffs intend to introduce the expert witness testimony of Dr. Drukteinis. Dr. Drukteinis has been practicing emergency medicine for over twenty years and currently serves as the Attending Physician at the emergency department of St. Joseph's Hospital in Tampa, Florida. (**ECF No. 782-9 at 1**). He has previously served as an Assistant Professor of Emergency Medicine with the University of South Florida. (**ECF No. 782-9 at 1**). In preparing his expert report and opinion in this case, Dr. Drukteinis reviewed all relevant medical records for Suárez, the interrogatories exchanged by the parties in this matter, text messages between various defendants, photographic evidence, over twenty deposition transcripts, as well as the expert witness reports of two additional expert witnesses retained by Plaintiffs. (**ECF No. 782-9 at 1–4**). In addition, Dr. Drukteinis relied on numerous scholarly publications focused on matters of emergency medicine and patient transfers. (**ECF No. 782-9 at 9–12 n.1–n.12**).

On May 16, 2025, Dr. Drukteinis produced an expert report setting forth his opinions regarding this case. (**ECF No. 782-9**). The report contains a detailed narrative of the facts of the case. (**ECF No. 782-9 at 4–7**). The report also carefully set forth the entire "Chain of Responsibility for [Suárez]" between the time that Suárez was first admitted into the emergency room at Presby until the time that he was transferred back to that facility from Doctors', listing each responsible physician and the specific times at which they were involved in the treatment of Suárez. (**ECF No. 782-9 at 7–9**). Further,

the report contains a section entitled "Standard of Care" in which Dr. Drukteinis set forth the standards of care applicable in this case. (**ECF No. 782-9 at 9–12**) (providing applicable standards of care with respect to patient transfers, medical intervention for patients presenting with choledocholithiasis, and patient handoffs in the emergency room context). The report also includes a section entitled "Lack of Conformity with the Standard of Care" in which Dr. Drukteinis provides a detailed account of his medical opinion that the physicians and staff at both Presby and Doctors' breached the prevailing standard of care by failing to perform an MRCP or ERCP procedure, conducting poor transitions of care between medical providers during the time that Suárez was hospitalized, and transferring Suárez to another hospital facility when there was no valid reason to do so. (**ECF No. 782-9 at 12–15**).

### III. Legal Standard

Federal Rule of Evidence 702 provides that a qualified expert may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Before a party may admit testimony from a retained expert witness, however, Rule 26 of the Federal Rules of Civil Procedure requires that the party submit a written report containing, in relevant part, "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" as well as "the facts or data considered by the witness in forming them[.]" FED. R. CIV. P. 26(a)(2)(B). Where a party fails to comply with the mandatory disclosure requirements of Rule 26(a) and their failure was not

"substantially justified or . . . harmless[,]" that "party is not allowed to use that information or witness to supply evidence . . . at a trial[.]" FED. R. CIV. P. 37(c)(1). The admissibility of expert witness testimony is thus contingent upon whether the parties "make explicit and detailed expert disclosures" that demonstrate the reliability and rigor of the proffered opinion. *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006); *see also Clemente-Vizcarrondo v. United States*, Civ. No. 17-1144, 2020 WL 748840, at *2 (D.P.R. Feb. 14, 2020); *Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 296 (D.P.R. 2017) ("[E]xpert-related disclosures are insufficient when they consist of sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.") (quotations omitted).

To determine whether the testimony proffered in an expert witness report is admissible, the trial judge performs a "gatekeeping function" by ensuring that the proffered expert testimony satisfies the admissibility criteria of Federal Rule of Evidence 702. *United States v. Sepulveda*, 15 F.3d 1161, 1183 (1st Cir. 1993); *Pages-Ramírez v. Ramírez-González*, 605 F.3d 109, 113 (1st Cir. 2010). This requires the Court to determine whether the expert's "scientific, technical, or other specialized knowledge . . . will assist the trier better to understand a fact in issue[,]" as well as to "ensure that [their] testimony both rests on a reliable foundation and is relevant to the task at hand." *Pages-Ramírez*, 605 F.3d at 113 (quotations and citations omitted); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (providing that under Federal Rule of Evidence 702 "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). This is a "flexible inquiry" that requires the Court to gauge the "overall reliability" of a proffered expert witness testimony as well as its "special relevancy" to the issues to be presented to the jury:

> Along with the reliability requirement, the *Daubert* Court imposed a special relevancy requirement. To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998); *Cummings v. Standard Register Co.*, 265 F.3d 56, 64 (1st Cir. 2001) (reliability of expert witness testimony under *Daubert* is contingent upon "whether the proposed testimony . . . rests on a reliable foundation and is relevant to the facts of the case.") (citations omitted). "The party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance." *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016).

Under Rule 702, the Court must focus on the "principles and methodology" of the proffered expert opinion, "not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "So long as an expert's scientific testimony rests upon good grounds . . . it should be tested by the adversarial process[.]" *López-Ramírez v. Toledo-González*, 32 F.4th 87, 94 (1st Cir. 2022) (quotations omitted). As the First Circuit has previously explained, "[t]here is an important difference between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011). Where the factual basis for an expert opinion is merely "weak"—rather than fundamentally unreliable or irrelevant—the expert's opinion is to be weighed by the jury. *López-Ramírez*, 32 F.4th at 94. On the other hand, the Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" and instead may rule the evidence inadmissible where "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## IV. Analysis

Puerto Rico law provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 10801.[3] "Within this rubric, three elements coalesce to make up a prima facie case for medical malpractice . . . a plaintiff must establish [1] the duty owed, [2] the occurrence of an act or omission constituting a breach of that duty, and [3] a sufficient causal nexus between the breach and some resultant harm." *Martínez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 285 (1st Cir. 2009).

In medical malpractice cases, establishing the minimum standard of care owed by a physician to a patient usually requires the assistance of an expert. *Rivera Rodríguez v. Quality Health Servs. of P.R.*, Civ. No. 18-1287, 2022 WL 3445348, at *3 (D.P.R. Aug. 4, 2022) (citing *Cortés Irizarry v. Corporación Insular de Seguros*, 111 F.3d 184, 190 (1st Cir. 1997)). Likewise, it is well-established that, "in a medical malpractice case under Puerto Rico law[,] a factfinder normally cannot find causation without the assistance of expert testimony." *Martinez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 286 (1st Cir. 2009) (noting that expert testimony is ordinarily required to establish causation because in medical malpractice cases "the issues tend to be scientifically driven and more nuanced than in most tort cases") (citations and quotations omitted). Against this backdrop, Plaintiff seeks to admit the expert witness testimony of Dr. Drukteinis.

---

[3] "Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code was enacted in November 2020. However, Articles 1802 and 1536 have provisions that are extremely similar and thus can be used interchangeably. Courts in this district accordingly apply caselaw analyzing Article 1802 to claims arising under Article 1536." *Forde v. Concho Corp.*, Civ. No. 23-01052, 2025 WL 320683, at *3 n.3 (D.P.R. Jan. 28, 2025) (quotations and citations omitted).

Defendants raise two arguments as to why the proffered testimony of Dr. Drukteinis should be ruled inadmissible at trial. First, Defendants assert that the expert witness report of Dr. Drukteinis fails "to identify the national standard of care" as to each of the seventeen Defendants involved in the treatment of Suárez. (**ECF No. 752 at 2**). Second, Defendants argue that the expert witness report of Dr. Drukteinis also fails to provide any opinion as to causation. (**ECF No. 752 at 2**). The Court will address each issue in turn.

### A. The expert report of Dr. Drukteinis reliably identifies a standard of care applicable to Defendants.

Invoking Rule 702 of the Federal Rules of Evidence, Defendants argue that the expert witness opinion of Dr. Drukteinis is lacking in relevance and reliability because it assigns the same standards of care as to all seventeen medical practitioners sued by Plaintiffs: "[n]otwithstanding the gamut of specialties involved in this case," Defendants argue, "Dr. Drukteinis' report does not identify the specific standard of care applicable to each physician . . . specialist, . . . nurse practitioner, . . . professional service [corporation], or [hospital.]" (**ECF No. 752 at 3**).[4]

---

[4] The Court notes that Defendants raise an additional argument for the exclusion of Dr. Drukteinis' opinion on the applicable standard of care: according to Defendants, the expert report submitted by Dr. Drukteinis ostensibly "lacks any statement that the unspecified standards of care [in question] . . . are nationally used." (**ECF No. 752 at 12**). This argument is without merit. For one, it is well-recognized that, in order to set forth a sufficiently reliable national standard of care, an expert witness report need not explicitly use the magic words "national standard of care." *Cortes-Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 190 (1st Cir. 1997) (holding that references to a "prevailing medical standard" used by the "average gynecologist" was sufficient to establish a standard of care). Second, far from offering "unspecified" conclusions or remaining "conspicuously silent" on the issue of the national standard of care – as Defendants inaccurately argue (**ECF No. 752 at 12**) – Dr. Drukteinis' expert report presents a detailed account of three distinct standards of care that he attests are directly applicable to the conduct of Defendants. (**ECF No. 782-9 at 9–12**). In his explanation of those standards, Dr. Drukteinis cites to a dozen relevant medical publications. (**ECF No. 782-9 at 9–12 n.1–n.12**). A cursory review of those publications suggests that they are not Puerto Rico focused, but rather address standards of medical practice that apply nationally. *See Vargas-Alicea v. Cont'l Cas. Co.*, Civ. No. 15-1941, 2019 WL 1453070, at *2 (D.P.R. March 31, 2019) (holding that an expert may establish the national standard of care with "reliance on peer-reviewed literature (i.e. journals, textbooks, and treatises)."). Moreover, beyond broadly addressing the scholarship cited by Dr. Drukteinis with skepticism, Defendants never attempt to explain

Defendants' argument is belied by the content of the report, which expressly sets forth three standards of care broadly applicable to all physicians who were responsible for the care of Suárez, (**ECF No. 782-9 at 9–12**), in addition to documenting in acute detail a narrative of the facts of this case and an account of the entire "Chain of Responsibility for [Suárez]" between the time that Suárez was first admitted into the emergency room at Presby until the time that he was transferred back to that facility from Doctors', listing each responsible physician, as well as the specific times at which they were involved in the treatment of Suárez. (**ECF No. 782-9 at 4–9**). It is therefore unclear why Defendants would argue that the expert report is deficient; indeed, the report specifically identifies each Defendant physician in an account of the "chain of responsibility," and identifies three specific standards of care applicable to all of them.

Moreover, Defendants identify no legal authority holding that, in multi-defendant medical malpractice cases, an expert report must set forth its conclusions regarding the standard of care with particularity as to each respective defendant. Nor do Defendants explain why the fact that the conclusions adopted by Dr. Drukteinis are broadly applicable to various Defendants would render those opinions any less reliable or relevant under Rule 702. Most importantly, Defendants fail to explain why they believe that the standards of care set forth in Dr. Drukteinis' report cannot logically apply to all defendants alike. For example, Defendants do not articulate why a standard regarding proper transitions of care between medical providers would differ depending on the medical specialty of each respective doctor. Defendants have thus failed to persuade the

---

how the citations in the report fail to establish a national standard of care. *See, e.g.*, (**ECF No. 752 at 12**) (arguing that the report "does not correlate how the content of the publications cited in [the] report . . . establish whether the relevant course of treatment is followed nationally[.]") (citing *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 878 (S.D. Ohio 2010)). The Court therefore rejects this argument.

Court that the expert witness testimony of Dr. Drukteinis is lacking reliability or relevance. The Court therefore declines to exclude the proffered testimony of Dr. Drukteinis on this basis.[5]

### B. Defendants fail to identify any additional legal grounds for the exclusion of the proffered testimony of Dr. Drukteinis.

Next, Defendants move the Court to exclude Dr. Drukteinis as a witness for "fail[ing] to provide opinions regarding causation vis a vis each physician Defendant[.]" (**ECF No. 752 at 13**). "In a multi-defendant case such as this," Defendants insist, "the expert's opinions must delineate the duty breached and causation as to each defendant." *Id*. On that basis, Defendants invoke *Daubert* and move the Court to exclude Dr. Drukteinis from testifying at trial as an expert witness.[6] (**ECF No. 752 at 2, 15**). However, in advancing this argument, Defendants fundamentally misapprehend the purpose of Rule 702 and the role of expert witnesses in federal court.

Defendants are incorrect when they claim that an expert witnesses in a medical malpractice case "must" articulate an opinion regarding causation in order to testify. (**ECF No. 752 at 13**). Dr. Drukteinis is not a party to this case and does not bear the burden to prove anything; instead, in civil litigation it is the *plaintiff* who bears the burden to prove all three elements of a negligence claim. Rule 702 provides civil litigants with the means to introduce expert witness testimony in order to prove the elements of their legal claims. *See* FED. R. EVID. 702. And *Daubert* requires that any such expert witness

---

[5] The Court also notes that, to the extent Dr. Drukteinis seeks to offer an opinion at trial as to how the standards of care identified in his report apply to the conduct of any individual Defendant in this case, an expert witness may reasonably supplement, explain, or elaborate on the material set forth in their Rule 26 report. *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011).

[6] To be clear, with respect to the issue of causation in Dr. Drukteinis' report, Defendants do not raise any arguments arising under Rule 26 of the Federal Rules of Civil Procedure. The Court therefore addresses only the requirements of Rule 702 of the Federal Rules of Evidence.

testimony be sufficiently reliable and relevant before it is admitted into evidence. *Daubert*, 509 U.S. at 589. Even assuming for the sake of argument that Defendants are correct that Dr. Drukteinis provides no opinion regarding causation in his expert witness report – a conclusion that the Court does not adopt – Defendants fail to explain why that would render his proffered testimony relating to the duty and breach elements of Plaintiffs' negligence claim unreliable. The Court finds that it would not. Accordingly, the Court declines to exclude the testimony of Dr. Drukteinis from evidence.

## V.     Conclusion

For the reasons set forth above, the Court finds that the proffered expert witness testimony of Dr. Drukteinis will assist the trier of fact. *See* FED. R. EVID. 702. Indeed, the opinions set forth in the expert witness report of Dr. Drukteinis are both reliable and relevant. Accordingly, Defendants' Motion in Limine is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of February, 2026.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**