UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AISLYN BATISTA ACEVEDO, *et al.*,

   *Plaintiffs*,

v.

PRESBYTERIAN COMMUNITY HOSPITAL INC., *et al.*,

   *Defendants*.

Civ. No. 22-01468 (MAJ)

## OPINION AND ORDER

### I. Introduction

On September 27, 2022, Plaintiffs Aislyn Batista Acevedo, Ina Ruth Kessler Krugman, and minor A.D.S.B. ("Plaintiffs") filed the instant suit on behalf of the late David Suárez ("Suárez") against Doctors' Center Hospital Bayamón ("Doctors'") and various other defendants (collectively, "Defendants"). (**ECF No. 1**).[1] From September 29, 2021, until his death on October 23, 2021, Suárez was hospitalized at Ashford Presbyterian Hospital ("Presby") and Doctors'. Plaintiffs allege that, during the time that Suárez was hospitalized, Defendants failed to properly screen and treat Suárez in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). 42 U.S.C. § 1395. Plaintiffs further allege that all Defendants are liable under Puerto Rico law for negligence and medical malpractice. (**ECF No. 288**).

---

[1] Plaintiffs filed their Second Amended Complaint, now the operative Complaint, on May 18, 2023. (**ECF No. 288**).

Dr. Michelle Avilés Pérez ("Dr. Avilés") has filed a Motion for Summary Judgment, seeking to dismiss the negligence claim brought against her. (**ECF No. 483**).[2] Specifically, Dr. Avilés moves for summary judgment on the ground that "there is no causal relationship" between her alleged acts of negligence "and the death of the patient twenty-one days" after her involvement. (**ECF No. 483 at 2**). Plaintiffs oppose the motion. For the reasons that follow, the motion is **DENIED**.

## II.     Factual Background[3]

As Dr. Avilés readily concedes in her Motion for Summary Judgment, "the facts relevant" to the claims against her "are simple and straightforward." (**ECF No. 483 at 7**). On September 29, 2021, Suárez was admitted to the emergency room at Ashford Presbyterian Hospital. (**ECF No. 588 at 15 ¶ 1**); (**ECF No. 633 at 1 ¶ 1**). At that time, Suárez presented with choledocholithiasis, an emergency medical condition. (**ECF No. 588 at 15 ¶¶ 2–5**); (**ECF No. 633 at 1–4 ¶¶ 2–5**).[4] According to the Amended

---

[2]     Dr. Avilés Pérez has supported her Motion with a Statement of Uncontested Material Facts. (**ECF No. 484**). This Motion was joined by her insurer, Puerto Rico Medical Insurance Defense Company ("PRMIDC"). (**ECF No. 654**); (**ECF No. 676**). Plaintiffs have filed a Memorandum in Opposition responding to Dr. Avilés Pérez's Motion, along with an Opposing Statement of Uncontested Material Facts (**ECF No. 587**); (**ECF No. 588**). Dr. Avilés Pérez replied, (**ECF No. 632**); (**ECF No. 633**), and Plaintiffs sur-replied, (**ECF No. 700**); (**ECF No. 702**).

[3]     Under Local Rule 56, "A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." Under the Rule, "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation[.]" D.P.R. LOC. CIV. R. 56(c). As the First Circuit has lamented, "violations of this local rule are astoundingly common and constitute an unnecessary burden to the trial court's docket and time." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Yet "compliance with Local Rule 56 is a mandate, not a suggestion." *Ramirez-Rivera v. DeJoy*, 693 F. Supp. 3d 210, 213 (D.P.R. 2023); *see also López-Hernández*, 64 F.4th at 26 ("We have repeatedly emphasized the importance of complying with said local rule and have implored litigants to comply or ignore it 'at their peril.'"). Accordingly, where a fact set forth by the movant has not been properly controverted, it will be deemed admitted. D.P.R. LOC. CIV. R. 56(e) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."). Where, as here, numerous responses have failed to comply with the plain requirements of Local Rule 56, "[t]he court [has] no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. LOC. CIV. R. 56(e).

[4]     Defendants object to every statement of fact set forth by Plaintiffs where the supportive record citation refers to a Rule 26 expert witness report. *See, e.g.,* (**ECF No. 632 at 3 n.2**) (arguing that, because

Complaint, medical staff at Presby allegedly declined to perform emergency surgery on Suárez until they were able to obtain a magnetic resonance cholangiopancreatography ("MRCP") or an endoscopic retrograde cholangiopancreatography ("ERCP"). (**ECF No. 288 at 17 ¶ 113**). Presby was unable to perform an MRCP or ERCP, however, as hospital staff had allegedly determined that Suárez was too obese and that the necessary equipment available at Presby could not accommodate him. (**ECF No. 288 at 18 ¶ 120**). Accordingly, the Complaint alleges, medical personnel at Presby decided to transfer Suárez to another facility. (**ECF No. 288 at 18 ¶ 120**).[5]

On October 1st, 2021, Suárez was transferred from Presby to Doctors'. (**ECF No. 484 at 9 ¶ 37**); (**ECF No. 588 at 16 ¶ 13**). Upon arrival, Suárez received a provisional diagnosis of pancreatitis. (**ECF No. 484 at 10 ¶ 38**); (**ECF No. 588 at 6 ¶ 38**). Pancreatitis is an emergency medical condition. (**ECF No. 588 at 16 ¶ 12**); (**ECF No. 633 at 8 ¶ 12**). Dr. Victor Rivera Cruz ("Dr. Rivera"), a physician at Doctors', determined that Suárez would need to undergo an MRCP and an ERCP procedure. (**ECF No. 588 at 16 ¶ 15**); (**ECF No. 633 at 9 ¶ 15**); (**ECF No. 633-2 at 1**) ("Q: Okay. So, in this case,

---

the expert report constitutes hearsay, it cannot be considered as part of the summary judgment record). It is true that previous cases have held that "hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (citations and quotations omitted). Nevertheless, on a motion for summary judgment, the "nonmoving party need not produce evidence in a *form* that would be admissible at trial[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added). Instead, what is crucial is whether the evidence cited to support or dispute a fact is capable of being reduced to an admissible form at trial. *See Joseph v. Lincare, Inc.*, 989 F.3d 147, 155 n.4 (1st Cir. 2021); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that evidence is not reducible to an admissible form where "there is nothing to indicate" that an affiant's "statements (which were based on the statements of unknown co-workers) will lead to admissible evidence.") (citations and quotations omitted). Defendants identify no reason to believe that the experts in question will not be able to testify at trial. The statements in question therefore appear to be reducible to an admissible form at trial. Accordingly, Defendants objection is overruled.

5     The Court does not adopt any of the facts drawn from the Amended Complaint as true; instead, these factual allegations are included solely for the purpose of providing relevant background to the facts material to the instant motion.

you knew right away that the patient needed either an MRCP or an ERCP, correct? A: An MRCP, and eventually an ERCP.").

Dr. Avilés is a doctor licensed to practice medicine in Puerto Rico. (**ECF No. 484 at 8 ¶ 31**); (**ECF No. 588 at 5 ¶ 31**). During the events that gave rise to this case, Dr. Avilés held privileges to provide medical treatment at the Emergency Room at Doctors', (**ECF No. 484 at 9 ¶ 34**); (**ECF No. 588 at 5–6 ¶ 34**), and was on shift in the Emergency Room between October 2, 2021 at 4:30 p.m. and October 3, 2021 at 1:00 a.m. (**ECF No. 588 at 16 ¶ 16**); (**ECF No. 633 at 9 ¶ 16**). Between 5:00 p.m. and 11:00 p.m. on October 2, 2021, Dr. Avilés was the only physician present in the Emergency Room. (**ECF No. 588 at 16 ¶ 17**); (**ECF No. 633 at 10 ¶ 17**). Dr. Avilés was therefore on shift during the time that Suárez was admitted as a patient at the Emergency Room of Doctors'.

During that time, Dr. Avilés did not order an MRCP or an ERCP for Suárez. (**ECF No. 588 at 17 ¶ 26**); (**ECF No. 633 at 13 ¶ 26**). Dr. Avilés also did not verify whether the hospital had the capacity to treat Suárez. (**ECF No. 588 at 17 ¶ 27**); (**ECF No. 633 at 13 ¶ 27**). Dr. Avilés did not order any tests or studies to reassess the patient's condition. (**ECF No. 588 at 17 ¶ 28**); (**ECF No. 633 at 14 ¶ 28**). Dr. Avilés also did not place any consultation with surgery or internal medicine. (**ECF No. 588 at 17 ¶ 30**); (**ECF No. 633 at 15 ¶ 30**).

Instead, on October 2, 2021, Dr. Avilés received a phone call from Dr. Rivera, her supervisor. (**ECF No. 484 at 10 ¶ 40**); (**ECF No. 484 at 12 ¶ 45**); (**ECF No. 588 at 6 ¶ 40**); (**ECF No. 588 at 7 ¶ 45**). During that phone call, Dr. Rivera told Dr. Avilés that Suárez should be transferred back to Presby. (**ECF No. 484 at 12 ¶ 45**); (**ECF No. 588 at 7 ¶ 45**). Dr. Rivera requested that Dr. Avilés contact the Emergency Room physician at Presby to "formally present the case." (**ECF No. 484 at 12 ¶ 45**); (**ECF No. 588 at 7**

¶ **45**). After that phone call, Dr. Avilés was informed by Presby that the proposed transfer had been accepted. (**ECF No. 484 at 13 ¶ 49**); (**ECF No. 588 at 8 ¶ 49**).

To execute the transfer, Dr. Avilés signed a "transfer certification" form in which she documented the condition of Suárez and provided some explanation of the reason for the transfer. (**ECF No. 484 at 14 ¶ 50**); (**ECF No. 588 at 9 ¶ 50**); (**ECF No. 588-11**). Crucially, the parties dispute the true reason for the decision to transfer Suárez back to Presby. *Id.* Plaintiffs claim that there was no legitimate justification for transferring Suárez back to Presby, where he had previously been denied care. *Id.*

Before signing the transfer form, Dr. Avilés did not independently verify whether Doctors' did in fact have the necessary facilities to treat Suárez. (**ECF No. 588 at 17 ¶ 27**); (**ECF No. 633 at 13 ¶ 27**). Dr. Avilés also did not document in the medical record whether Presby had confirmed with her that it had the proper capacity to treat Suárez. (**ECF No. 588 at 17 ¶ 31**); (**ECF No. 633 at 15 ¶ 31**). And at deposition, Dr. Avilés was not able to confirm whether she knew that Presby had the capacity to treat Suárez at the time of the transfer. (**ECF No. 588 at 17 ¶ 32**); (**ECF No. 588-15 at 25:16 – 26:1**) ("Q: My question was if you sent the patient back to Ashford without you knowing if they had the facilities or not to treat the patient . . . Yes or no? A: Yes, I sent him.").

In fact, the transfer certification form never stated the purported benefits of the transfer for Suárez. (**ECF No. 588 at 18 ¶ 38**); (**ECF No. 633 at 18 ¶ 38**). At deposition, Dr. Avilés testified that she was not aware of the proper protocol for patient transfers at Doctors'. (**ECF No. 588 at 18 ¶ 44**); (**ECF No. 633 at 20 ¶ 44**). Dr. Avilés did not deny at deposition that, before Suárez was transferred back to Presby, Suárez was her patient; that she had the choice of not authorizing the hospital transfer; and that she

agreed with the decision to transfer Suárez. (**ECF No. 588 at 18 ¶¶ 46–48**); (**ECF No. 633 at 20–21 ¶¶ 46–48**).

Shortly after his arrival at Presby, on October 4, 2021, Suárez was intubated. (**ECF No. 588 at 19 ¶ 50**); (**ECF No. 633 at 22 ¶ 50**). Several weeks later, on October 23, 2021, Suárez died. (**ECF No. 484 at 17 ¶ 60**); (**ECF No. 588 at 12 ¶ 60**). Dr. Dainius Drukteinis ("Dr. Drukteinis"), an expert witness for the Plaintiffs, testified at deposition that the conduct of Dr. Avilés was "one of many causes" that lead to the death of Suárez. (**ECF No. 484 at 18 ¶ 65**); (**ECF No. 588 at 14 ¶ 65**).

### III. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and only questions of law remain. *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 68 (1st Cir. 2021). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party[.]" *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). "A fact is material if it has the potential of affecting the outcome of the case[.]" *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (internal quotations and citations omitted).

To obtain summary judgment, the moving party must show that "there is an absence of evidence to support" the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (citation omitted). This burden is met "when the moving party demonstrates that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *E.E.O.C. v. Kohl's Dept.*

*Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) (internal quotations and citation omitted). In opposing a motion for summary judgment, the non-movant "bears the burden of producing specific facts sufficient to" defeat summary judgment. *González-Cabán v. JR Seafood Inc.*, 48 F.4th 10, 14 (1st Cir. 2022) (internal quotations and citation omitted). The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). In addition, the Court will "not engage making credibility determinations or weighing the evidence at the summary judgment stage[.]" *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The goal of "summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 56 (1st Cir. 2021). In short, for the Defendant to prevail on summary judgment, they "must demonstrate that, even admitting well-pleaded allegations in the light most favorable to Plaintiff, the applicable law compels a judgment in its favor." *Vega-Martínez v. Hosp. San Antonio Inc.*, 18-CV-1055, 2022 WL 4539850, at *3 (D.P.R. Sept. 28, 2022).

### IV. Analysis

Puerto Rico law provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31

L.P.R.A. § 10801.[6] "Within this rubric, three elements coalesce to make up a prima facie case for medical malpractice . . . a plaintiff must establish [1] the duty owed, [2] the occurrence of an act or omission constituting a breach of that duty, and [3] a sufficient causal nexus between the breach and some resultant harm." *Martínez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 285 (1st Cir. 2009). Dr. Avilés argues that summary judgment is warranted because Plaintiffs have failed to raise a genuine issue of material fact as to causation: the "law requires [P]laintiffs to show that [Dr. Avilés]'s alleged negligence was more likely than not the cause-in-fact of [Suárez's] death[,]" Dr. Avilés stresses. (**ECF No. 483 at 12**). Calling into question the expert witness testimony of Dr. Drukteinis, who concluded that the alleged negligence of Dr. Avilés was "one of many causes" that lead to the death of Suárez, Dr. Avilés argues that no reasonable jury could find for the Plaintiffs on causation. *Id*. The Court disagrees.

To succeed in a medical malpractice action under Puerto Rico law, "[a] plaintiff must prove, by a preponderance of the evidence, that the physician's negligent conduct was the factor that 'most probably' caused harm to the plaintiff." *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir. 1994). This is known as the doctrine of "adequate causation." The Supreme Court of Puerto Rico has recently explained the concept as follows:

> In order for there to be a causal link, there must be a relationship between the injury and the reasonable, ordinary, and natural consequence of the act or omission attributed to the defendant. Therefore, it is this direct relationship that allows for the conclusion that the tortious act attributed to the defendant is the adequate cause of the damages claimed.

---

[6] "Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code was enacted in November 2020. However, Articles 1802 and 1536 have provisions that are extremely similar and thus can be used interchangeably. Courts in this district therefore apply caselaw analyzing Article 1802 to claims arising under Article 1536." *Forde v. Concho Corp.*, Civ. No. 23-01052, 2025 WL 320683, at *3 n.3 (D.P.R. Jan. 28, 2025) (quotations and citations omitted).

*Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 D.P.R. 465, 485 (P.R. 2022).[7] Put another way, the key question is one of foreseeability. *See Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir. 1987) ("In Puerto Rico, just as in the common law jurisdictions, foreseeability is the touchstone of extracontractual liability. Foreseeable events are those that may be calculated by a prudent conduct alert to eventualities that may be expected in the course of life.") (internal quotations omitted) (citing *Rivera Torres v. Cruz Corchado*, 119 D.P.R. 8, 87 J.T.S. 51 (May 20, 1987); *Jimenez v. Pelegrina,* 112 P.R.R. 881, 888 (1982)).

Causation "need not be established with mathematical accuracy," nor is it necessary to rule out all other causes of the injury. *Id*. Nevertheless, "a jury normally cannot find causation based on mere speculation and conjecture." *Negrón-Adames v. Dorado Health Inc.*, 21-cv-01077, 2023 WL 7298776, at *6 (D.P.R. Nov. 6, 2023) (citations omitted); *Rodríguez Crespo v. Hernández*, 121 DPR 639, 650 (1988). In medical malpractice cases, given the complex scientific issues they often present, expert witness testimony is usually necessary to establish causation. *See Rivera Rodríguez v. Quality Health Servs. of P.R.*, Civ. No. 18-1287, 2022 WL 3445348, at *3 (D.P.R. Aug. 4, 2022) (citing *Cortés Irizarry v. Corporación Insular de Seguros*, 111 F.3d 184, 190 (1st Cir. 1997)); *see also Martinez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 286 (1st Cir. 2009) (noting that expert testimony is ordinarily required to establish

---

[7] The original language of the opinion reads as follows:

> . . . para surgir el elemento del nexo causal, debe de existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al autor demandado. Por lo tanto, es esa relación directa la que permite concluir que el acto torticero imputado es la causa adecuada del daño reclamado.

*Cruz Flores v. Hospital Ryder Memorial, Inc.*, 210 D.P.R. 465, 485 (P.R. 2022).

causation because in medical malpractice cases "the issues tend to be scientifically driven and more nuanced than in most tort cases") (citations and quotations omitted).[8]

In arguing that the expert witness testimony Plaintiffs seek to introduce at trial is insufficient on the element of causation, Dr. Avilés emphasizes two issues.[9] First, Dr. Avilés characterizes as remote the relationship between (1) the decision to transfer Suárez back to Presby and (2) his eventual death. *See, e.g.,* (**ECF No. 483 at 10–11**) ("Following [Suárez's] admission to Ashford Presbyterian Community Hospital on October 2, 2021, he was subjected to multiple procedures, treatments, tests and medications and was attended by multiple physicians from various medical specialties . . . until his unfortunate death on October 23, 2021[.]"). Second, Dr. Avilés argues that the expert witness testimony proffered by Plaintiffs is inadequate to establish a causal relationship between these ostensibly remote events. (**ECF No. 483 at 12**). Dr. Avilés zeroes in on the proffered expert witness opinion of Dr. Drukteinis, who opined that the conduct of Dr. Avilés was "one of the many causes" in this case. *Id.* According to Dr. Avilés, to acknowledge that her conduct was only "one of many causes . . . is, at best, an acknowledgment of possibility – not probability." (**ECF No. 483 at 12–13**).

---

[8] It is not clear whether this case would fall into the "narrow band of possible exceptions to the general rule requiring expert testimony" where "common knowledge and experience are all that is necessary to comprehend a defendant's negligence." *See Mercado-Velilla v. Asociación Hosp. del Maestro*, 902 F. Supp. 2d 217 at 239; *Martínez–Serrano*, 568 F.3d at 286. However, even assuming for the sake of argument that expert witness testimony would be required to prove causation in this case, the expert witness testimony proffered by Plaintiffs is sufficient to do so. The Court therefore need not pass on the question.

[9] In passing, Dr. Avilés also stresses that she was merely following the instructions of her supervisor when she was involved in the transfer of Suárez, and that she did no more than act "in accordance with Dr. Rivera Cruz's instructions." (**ECF No. 483 at 9**) (noting that the "involvement of Dr. [Avilés] regarding the patient transfer from Doctor's Center Hospital Bayamón, Inc. to Ashford Presbyterian Community Hospital, Inc. on October 2, 2021 was made at the request of Dr. Rivera"). Because Dr. Avilés does not move for Summary Judgment on the grounds that Plaintiffs have failed to raise a genuine issue as to whether there was a breach of the applicable standard of care, the Court need not address this argument.

This argument ignores the factual record. When Suárez was transferred to Doctors', he presented with an emergency medical condition for which medical intervention was necessary. (**ECF No. 484 at 10 p. 38**); (**ECF No. 588 at 6 p. 38, 16 p. 12, 16 p. 15**); (**ECF No. 633 at 8 p. 12, 9 p. 15**). During the time that Suárez was hospitalized at Doctors', he did not receive the medical treatment that he needed, (**ECF No. 588 at 17 p. 26**); (**ECF No. 633 at 13 p. 26**), and the parties dispute whether there was ultimately a legitimate reason to transfer him from Doctors' to a different facility. (**ECF No. 484 at 14 p. 50**); (**ECF No. 588 at 9 p. 50**). When Dr. Avilés transferred Suárez back to Presby, a facility from which he had already been transferred only one day prior, (**ECF No. 484 at 9 p. 37**); (**ECF No. 588 at 16 p. 13**), she had not verified whether Doctors' could have properly treated Suárez, (**ECF No. 588 at 17 p. 27**); (**ECF No. 633 at 13 p. 27**), nor had she confirmed whether Presby had the capacity to treat Suárez at the time of the transfer. (**ECF No. 588 at 17 p. 32**); (**ECF No. 588–15 at 25:16 – 26:1**). Only three days later, Suárez was intubated. (**ECF No. 588 at 19 p. 50**); (**ECF No. 633 at 22 p. 50**). He remained intubated until he died several weeks later. (**ECF No. 484 at 17 p. 60**); (**ECF No. 588 at 12 p. 60**). Under these circumstances, a reasonable juror could credit the testimony of Dr. Drukteinis and find that Suárez's death was a foreseeable result of the decision to transfer him back to Presby without first determining whether either facility could treat his life-threatening condition. These issues therefore must be submitted to the jury. *See Swift v. United States*, 866 F.2d 507, 510 (1st Cir.1989) (observing, with respect to the roughly equivalent concept of "foreseeability" in Massachusetts tort law, that "[n]ot only ordinary fact questions, but also evaluative applications of legal standards (such as the legal concept of foreseeability) to the facts are properly [questions for the factfinder]." ) (internal quotations and citations omitted);

*Perez Arzuaga*, 828 F.2d at 847 (comparing the concept of "foreseeability" in Puerto Rico tort law to common law jurisdictions).

Prior cases from this District have reached the same result. In *Martínez-Álvarez v. Ryder Memorial Hospital*, a defendant raised a similar argument to the one raised by Dr. Avilés here. Civ. No. 09-2038, 2010 WL 3431653, at *11 (D.P.R. Aug. 31, 2010). Citing to the rule that the conduct of the physician must be "'the factor that most probably caused harm to the plaintiff[,]'"the defendant in *Martínez-Álvarez* "read this rule as establishing that only one factor may be the factor that 'most probably' caused the harm." *Martínez-Álvarez*, 2010 WL 3431653, at *11 (quoting *Lama v. Borrás*, 16 F.3d 473, 478 (1st Cir. 1994)). The Court rejected that argument:

> In this case, because Canetti was the last doctor to have an opportunity to save the patient, Ortiz reasons that all previous negligent actors are relieved of responsibility. This interpretation is contrary to the legal rules regarding situations where multiple actions coincide to cause a particular harm . . .In the instant case, Plaintiffs presented evidence regarding the roles played by multiple Defendants in causing the death of Adalberto Martínez. Plaintiffs' theory was that the combined negligence of various actors is the factor that most probably caused the death of the patient. The Jury accepted this theory with regard to all Defendants, which they were entitled to do on the basis of the evidence presented.

*Id*.[10] This Motion for Summary Judgment demands a similar result. The Court finds that a reasonable jury could credit the opinion of Dr. Drukteinis and find that the alleged negligence of Dr. Avilés was the adequate cause of Suárez's death.

---

[10] The holding of *Martínez-Álvarez* is consistent with the tort doctrine of intervening causes. Under this doctrine, "[a]mong the consequences of a particular type for which a negligent actor is legally responsible are those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." *See Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir. 1987). The doctrine of intervening causes is recognized in Puerto Rico. *Id*. (analyzing *Negrón v. Orozco*, 113 D.P.R. 921 (P.R. 1983), where the police department of Puerto Rico was held liable for a shooting death that occurred in the police station: "The efficient and decisive cause of [the victim's] death is a combination of [the officer's] action, shooting his antagonist, and the omission of the police officers in charge of keeping order and security in the police station[.]"). *See also* Restatement (Third) of Torts § 27 cmt. a (2010) (noting that, in a situation where "there are two or more competing causes, each of which is sufficient without the other to cause the

Case 3:22-cv-01468-MAJ   Document 836   Filed 02/10/26   Page 13 of 13

Civ. No. 22-01468 (MAJ)                                                                                    Page 13

## V.      Conclusion

After careful consideration, the Court finds that a reasonable jury could conclude that the alleged negligence of Dr. Avilés was the adequate cause of Suárez's death. Accordingly, summary judgment is not warranted. The instant motion is therefore **DENIED**.

It is so **ORDERED**.

In San Juan, Puerto Rico, this 10th day of February, 2026.

>                              */s/ María Antongiorgi-Jordán*
>                              **MARIA ANTONGIORGI-JORDAN**
>                              **UNITED STATES DISTRICT JUDGE**

---

harm . . . courts have long imposed liability when a tortfeasor's conduct, while not necessary for the outcome, would have been a factual cause if the other competing cause had not been operating.").