UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**AISLYN BATISTA ACEVEDO,** *et al.*,

    *Plaintiffs*,

v.

**PRESBYTERIAN COMMUNITY HOSPITAL INC.,** *et al.*,

    *Defendants*.

Civ. No. 22-01468 (MAJ)

## OPINION AND ORDER

### I.  Introduction

On September 27, 2022, Plaintiffs Aislyn Batista Acevedo, Ina Ruth Kessler Krugman, and minor A.D.S.B. ("Plaintiffs") filed the instant suit on behalf of the late David Suárez ("Suárez") against Doctors' Center Hospital Bayamón ("Doctors'") and various other defendants ("Defendants"). (**ECF No. 1**).[1] From September 29, 2021, until his death on October 23, 2021, Suárez was hospitalized at Ashford Presbyterian Hospital ("Presby") and Doctors'. Plaintiffs allege that, during the time that Suárez was hospitalized, Defendants failed to properly screen and treat Suárez in violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). 42 U.S.C. § 1395. Plaintiffs also allege that all Defendants are liable under Puerto Rico law for negligence and medical malpractice. (**ECF No. 288**).

Before the Court is a Motion in Limine filed by Doctors'. (**ECF No. 746**). Doctors' moves to exclude the testimony of three expert witnesses retained by Plaintiffs. First,

---

[1]  Plaintiffs filed their Second Amended Complaint, now the operative Complaint, on May 18, 2023. (**ECF No. 288**).

Doctors' argues that expert witnesses Dr. Elliot Goodman ("Dr. Goodman") and Dr. Michael Quinn ("Dr. Quinn") must be precluded from presenting any testimony relating to alleged EMTALA violations committed by Doctors' and its staff. (**ECF No. 746 at 1 ¶ 1**). Second, Defendants argue that Plaintiffs should be prohibited from making any argument or introducing any evidence relating to the absence of fact witness Dr. Alexis Garau, a witness for Defendants who will be precluded from testifying. (**ECF No. 746 at 1 ¶ 2**).[2] Plaintiffs oppose the Motion. (**ECF No. 782**). For the reasons set forth below, Doctors' Motion in Limine is **DENIED**.

## II. Analysis

### A. Dr. Goodman and Dr. Quinn will not be precluded from presenting testimony relating to alleged EMTALA violations committed by Doctors' and its staff.

Defendants move the Court to prohibit Plaintiffs' experts from testifying as to any alleged EMTALA violations committed by Doctors' and its staff. At deposition, Defendants asked of Plaintiffs' experts whether each "consider[ed] [him]self an EMTALA expert" and whether either would "provide any opinions regarding EMTALA departures in this case[.]" (**ECF No. 746-1 at 5–6**).[3] Dr. Goodman and Dr. Quinn each answered in the negative. Invoking Rule 26 of the Federal Rules of Civil Procedure on that basis, Defendants move the Court to hold that Plaintiffs' experts are "precluded from proffering

---

[2] In addition, Doctors' moves the Court to preclude expert witnesses Dr. Goodman, Dr. Quinn, and Dr. Dainius Drukteinis ("Dr. Drukteinis") from presenting any testimony relating to the alleged negligence of non-medical and nursing staff at Doctors'. (**ECF No. 746 at 1 ¶ 2**). The Court has previously addressed this issue and has ruled that none of the expert witnesses retained by Plaintiffs may provide testimony regarding the alleged negligence of nursing staff at Doctors'. *See* (**ECF No. 837**). Since the Court has already granted the relief that Doctors' seeks, this request is moot.

[3] With respect to Dr. Quinn, the question posed by counsel for the Defendants at deposition was whether "it [woud] be fair to say that . . . the scope of your retainment in this case does not include you testifying as to any EMTALA violations?" Dr. Quinn answered, "That's fair to say, yes." (**ECF No. 746-3 at 5**).

testimony or opinions as to alleged EMTALA violations" by Doctors'. (**ECF No. 746 at 2**).

Before a party may admit testimony from an expert witness, Rule 26 of the Federal Rules of Civil Procedure requires that the party submit a written report containing, in relevant part, "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" as well as "the facts or data considered by the witness in forming them[.]" FED. R. CIV. P. 26(a)(2)(B). An expert witness may reasonably supplement, explain, or elaborate on the material set forth in their Rule 26 report. *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011). However, where a party fails to comply with the mandatory disclosure requirements of Rule 26(a) and their failure was not "substantially justified or . . . harmless[,]" that "party is not allowed to use that information or witness to supply evidence . . . at a trial[.]" FED. R. CIV. P. 37(c)(1). The admissibility of expert witness testimony is thus contingent upon whether the parties "make explicit and detailed expert disclosures" that demonstrate the reliability and rigor of the proffered opinion. *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006); *see also Clemente-Vizcarrondo v. United States*, Civ. No. 17-1144, 2020 WL 748840, at *2 (D.P.R. Feb. 14, 2020); *Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 296 (D.P.R. 2017) ("[E]xpert-related disclosures are insufficient when they consist of sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.") (quotations omitted).

Because the expert reports of Dr. Goodman and Dr. Quinn say nothing explicit about EMTALA, Defendants argue, they should be barred from providing any expert opinion relating to the EMTALA claims brought by Plaintiffs against Doctors' and its staff. (**ECF No. 746 at 2**). After all, Defendants insist, Dr. Goodman and Dr. Quinn each

acknowledged at deposition that they were not experts on EMTALA and affirmed that they did not intend to offer any opinions regarding the statute. (**ECF No. 746 at 3–4**). This argument rests on a faulty premise.

While Defendants are correct that neither Dr. Goodman nor Dr. Quinn is a legal expert on EMTALA,[4] that does not prevent them from offering a reliable *medical* opinion that may bear on Plaintiffs' EMTALA claims. EMTALA was enacted in 1986 "to prevent hospital emergency rooms from refusing to accept or treat patients with emergency conditions[.]" *Alvarez-Torres v. Ryder Memorial Hosp., Inc.*, 582 F.3d 47, 51 (1st Cir. 2009) (citing *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1189 (1st Cir. 2009)) (internal quotations omitted). To achieve that end, "EMTALA imposes duties on covered facilities to: (a) provide an appropriate medical screening examination for those who come to an emergency room seeking treatment, and (b) provide, in certain situations, such further medical examination and such treatment as may be required to stabilize the medical condition." *Id.* (citing 42 U.S.C. § 1395dd(a), (b)(1)(A)) (internal quotations omitted). Violations of EMTALA therefore center on questions regarding the evaluation and treatment that a hospital patient with an emergency condition receives. In their expert reports, both Dr. Goodman and Dr. Quinn offered an opinion regarding the examination, treatment, and eventual transfer of Suárez when he was a patient at Doctors'. It is therefore inaccurate when Defendants allege that the expert reports in question are "devoid of any opinions as to EMTALA violations[.]" (**ECF No. 746 at 4**). Indeed, Dr.

---

[4] It is worth noting that, were either Dr. Goodman or Dr. Quinn to present opinion testimony regarding their legal conclusions about EMTALA, they would likely be barred from doing so. *See Travelers Cas. & Sur. Co. of Am. v. Vazques-Colon*, Civ. No. 18-1795, 2025 WL 886103, at \*6 (D.P.R. Mar. 19, 2025) ("[W]hen an expert witness purports to 'draw ultimate legal conclusions,' their testimony cannot be considered to 'properly assist the [trier] of fact' because the testimony has 'invaded the province of the jury.'") (quoting *Carballo Rodriguez v. Clark Equip. Co.*, 147 F.Supp.2d 81, 85 (D.P.R. 2001)).

Quinn's report, for instance, explains in depth his familiarity "with the standard of care as it pertains to evaluating, diagnosing, and managing patients presenting with abdominal pain[,]" as well as his familiarity with "the appropriate obtainment of laboratory studies, [and] diagnostic imaging in the workup and management of acute pancreatitis[.]" (**ECF No. 746-4 at 1**). The same is true of Dr. Goodman's report. *See, e.g.*, (**ECF No. 746-2 at 5**) (asserting that it is "vital that a patient such as [Suárez] who presents with a clinical and biochemical picture of biliary obstruction and acute pancreatitis has his common bile duct fully evaluated with MRCP and/or ERCP."). The Court therefore declines to rule inadmissible any of the proffered testimony of Dr. Goodman and Dr. Quinn relating to Plaintiffs' EMTALA claims.

### B. Plaintiffs will not be precluded from making arguments or introducing any evidence relating to the absence of witness Dr. Alexis Garau.

Dr. Alexis Garau ("Dr. Garau") is a physician who serves as an anesthesiologist at Doctors'. (**ECF No. 688 at 4**). Doctors' claims that Suárez did not receive the treatment he required at their facility because Dr. Garau had allegedly reported to defendant Dr. Victor J. Rivera-Cruz that the operating table at the hospital was too small to withstand the weight of Suárez. (**ECF No. 750**). Dr. Garau is not a defendant in this case.

During the course of discovery, Doctors' failed to timely disclose the name of Dr. Garau to Plaintiffs as a potential fact witness. (**ECF No. 746 at 6**). Accordingly, the Court ruled that Dr. Garau would be excluded as a witness from trial. (**ECF No. 687**); (**ECF No. 719**). The Court has also recently held that relevant hearsay statements allegedly made by Dr. Garau regarding the weight-capacity of operating tables at Doctors' will be inadmissible at trial under Rule 802 of the Federal Rules of Evidence. (**ECF No. 787**).

Citing to Rule 403 of the Federal Rules of Evidence, Doctors' argue that "Plaintiffs should . . . be precluded from offering testimony [or] arguing that [Doctors'] failed to present his testimony on their behalf." (**ECF No. 746 at 6**). Doctors' argues that "[t]o allow such testimony or argument by Plaintiffs would unduly prejudice [Doctors'] [or] potentially confuse the jury inasmuch as they would not be privy to any of the substantive or procedural events that led [to] the exclusion of Dr. Garau as a fact witness." (**ECF No. 746 at 7**).

In light of the Court's previous rulings regarding Dr. Garau, it is not clear that any such evidence or arguments will be relevant at trial. *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[,] and . . . the fact is of consequence in determining the action."). The Court therefore cannot determine whether the possible relevance of any such evidence would be substantially outweighed by unfair prejudice under Rule 403. This motion is therefore not ripe for resolution. Accordingly, Doctors' request is **DENIED**.

### III. Conclusion

After careful consideration, the Court finds that the instant motion fails to present adequate grounds warranting the exclusion of evidence from trial. Accordingly, the Motion in Limine is **DENIED** in its entirety.

It is so **ORDERED**.

In San Juan, Puerto Rico, this 10th day of February, 2026.

*/s/ María Antongiorgi-Jordán*
MARIA ANTONGIORGI-JORDAN
UNITED STATES DISTRICT JUDGE